[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11361
Non-Argument Calendar

_____

Agency No. A206-621-095


JUNIOR ALFREDO MEDINA ACOSTA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 12, 2018)

Before JULIE CARNES, FAY and HULL, Circuit Judges.

PER CURIAM:

Junior Alfredo Medina Acosta petitions for review of the Board of Immigration Appeals' ("BIA") final order denying his motion to reopen his removal proceedings based on new evidence. We deny his petition.

## I. BACKGROUND

Acosta, a native and citizen of Honduras, entered the United States without inspection in January 2014. Border patrol agents arrested him upon entry. In his initial interview, Acosta expressed no fear of return. However, in his credible fear interview, Acosta stated that he had left Honduras because he was receiving death threats from a man named Jose Antonio Sarmiento, who blamed Acosta's father for the death of his nephew and who had killed Acosta's grandfather, had his cousin killed, and had shot at Acosta.

In February 2014, the Department of Homeland Security issued Acosta a notice to appear, which alleged that he was removable under Immigration Nationality Act ("INA") § 212(a)(7)(A)(i)(1), 8 U.S.C. § 1182(a)(7)(A)(i)(l), for being an alien who, at the time of admission, did not possess a valid entry document. Acosta conceded removability as charged. In November 2014, Acosta filed an application for asylum, withholding of removal, and relief pursuant to the

Convention Against Torture ("CAT"), based on membership in a particular social group.[1]

After considering testimony and evidence in a hearing on Acosta's application for withholding of removal,[2] the Immigration Judge ("IJ") denied relief.  Acosta appealed to the BIA, which dismissed his appeal in August 2016. Assuming that Acosta was credible, the BIA agreed with the IJ that Acosta had not established eligibility for asylum and that Acosta had failed to demonstrate past persecution on account of a protected ground because he did not show that the harm he suffered was on account of his membership in a particular social group. Rather, the BIA found that the harm, which arose from a land dispute and Sarmiento's purported desire to retaliate for the death of a relative, was the result of criminal activity.  The BIA also determined that criminal activity was not enough to show persecution on account of a protected ground.

The BIA agreed with the IJ's conclusion that Acosta had failed to meet his burden to show that it would be unreasonable for him to relocate within Honduras. The BIA found that none of Acosta's male family members had been harmed for at least two years and that he had failed to show that the threat of future harm was

---

[1] Acosta also alleged persecution based on political opinion, but he later abandoned this ground for relief.

[2] For a full recitation of the facts, see *Acosta v. U.S. Att'y Gen.*, 704 F. App'x 869 (11th Cir. 2017).

country-wide. The BIA also concluded that Acosta had failed to show that the Honduran authorities were unable or unwilling to protect him and his family.

Inasmuch as Acosta was unable to demonstrate eligibility for asylum, the BIA concluded that he was precluded from qualifying for withholding of removal, which required a higher burden of proof. The BIA noted that Acosta had not meaningfully challenged the IJ's denial of his CAT claim, but did agree with the IJ that Acosta had not shown it was more likely than not that he would be tortured by or with the acquiescence of the government if returned to Honduras. Accordingly, the BIA dismissed Acosta's appeal. Acosta filed a petition for review with this court, which we denied it in part and dismissed in part.[3] *Acosta v. U.S. Att'y Gen.*, 704 F. App'x 869 (11th Cir. 2017).

While his petition for review with this court was pending, Acosta filed a motion to reopen his removal proceedings with the BIA based on evidence not previously available. First, he argued that he had established a nexus between the violence and his membership in his family because his family was targeted by Sarmiento and mixed motives for persecution were permissible. He provided affidavits from his mother, a police inspector, and his sister, attesting to the continued death threats to himself and to his family. Acosta argued that this new evidence clearly established his fear of future persecution and that he could not

---

[3] We dismissed Acosta's petition as to his claim for CAT relief for lack of jurisdiction because he had failed to argue it before the BIA. *Acosta*, 704 F. App'x at 874-75.

safely relocate to another part of Honduras.  Second, Acosta argued that he feared torture by the Honduran government, again seeking relief under CAT.  He believed that he would be tortured upon his return, based on his own prior testimony that the Honduran government was complicit in the crime and violence occurring in Honduras and that the police failed to investigate the robbery of his aunt.

The BIA denied Acosta's motion to reopen because the evidence presented by the motion, including affidavits that detailed threats received subsequent to Acosta's proceedings before the IJ, was insufficient to make a prima facie showing of Acosta' s eligibility for relief, for the same reasons discussed in its prior decision.  Thus, the BIA determined that Acosta had failed to meet his burden of showing that the evidence presented would likely change the result in his case if the proceedings were to be reopened.

## II. DISCUSSION

On petition for review, Acosta argues that the BIA erred when it denied his motion to reopen because the affidavits that he presented from his mother, his sister, and a police inspector established a sufficient nexus between past persecution and his particular social group, a well-founded fear of future persecution, and his inability to reasonably relocate anywhere within Honduras.[4]

---

[4] By failing to raise it in his petition for review, Acosta has abandoned any claim challenging the BIA's denial of his motion to reopen on the basis that he failed to demonstrate a prima facie case for CAT relief.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

We review the denial of a motion to reopen removal proceedings for abuse of discretion. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). If the BIA's decision was based on a legal determination, then we review the decision de novo. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007). We review only the BIA's decision, except to the extent that the BIA has expressly adopted the IJ's opinion or reasoning. *Jiang*, 568 F.3d at 1256.

An alien may file a motion to reopen his removal order. 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c). The motion should state the new facts to be proven if the removal proceedings were reopened and should be supported by affidavits or other evidentiary material. 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1). The alien bears a heavy burden to establish that, if the proceedings were opened, the new evidence would likely change the result of his case. *Jiang*, 568 F.3d at 1256-57. At minimum, there are three reasons that the BIA may deny a motion to reopen: (1) failure to establish a prima facie case of eligibility for relief; (2) failure to present evidence that is material and was previously unavailable; and (3) a determination that the alien is not entitled to a favorable exercise of discretion despite being statutorily eligible for relief. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001).

To qualify for asylum, the alien must establish that he has a well-founded fear that he will be persecuted if removed, based on the alien's race, religion,

6

nationality, political opinion, or membership in a particular social group. *Jiang*, 568 F.3d at 1257; 8 U.S.C. § 1158(b)(1)(B)(i). "[E]vidence that either is consistent with acts of private violence . . . or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (brackets in original) (quoting *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006)). Also, an alien does not have a well-founded fear of future persecution if he could avoid persecution by reasonably relocating to another part of the country. 8 C.F.R. § 208.13(b)(2)(ii). Where an alien has not established past persecution, he bears the burden of showing it would be unreasonable for him to relocate, unless the persecution is by a government or is government-sponsored. *Id*. § 208.13(b)(3)(i).

To be entitled to withholding of removal, an alien must establish that his life or freedom would be threatened on account of his race, religion, nationality, political opinion, or membership in a particular social group, which means that it is "more likely than not" he will be persecuted or tortured on account of a protected ground upon being returned to his country. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1238 (11th Cir. 2007). "[W]here an applicant fails to meet the burden for asylum, he necessarily cannot meet the more stringent burden for

7

withholding of removal." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1249 n.3 (11th Cir. 2006).

The BIA did not abuse its discretion when it determined that Acosta did not establish a prima facie case of asylum or withholding of removal that warranted reopening his removal proceeding. The new incidents cited in the three affidavits did not cure the defects that the IJ, the BIA, and this court found prevented Acosta from successfully obtaining relief through his initial application. *See Acosta*, 704 F. App'x 869. First, the recent threats to Acosta's mother and sister were more of the same incidents that he reported at the merits hearing and still do not establish that Sarmiento had any other animus towards the family besides the land dispute. *See id.* at 870-71. Because this activity was determined to be criminal activity, it was not sufficient to show past persecution on account of a protected ground. *See Rodriguez*, 735 F.3d at 1310; *see also Acosta*, 704 F. App'x at 874.

Second, the threats that Acosta's mother and sister and the police inspector described indicate that Sarmiento was continuing to look for Acosta in the same places that he had before Acosta left Honduras. This court previously determined that substantial evidence supported the fact that Acosta could reasonably relocate,[5] and the affidavits do not provide any new evidence for why he would not able to. Therefore, Acosta has failed to demonstrate that the new evidence presented in his

---

[5] *Acosta*, 704 F. App'x at 874.

8

motion to reopen and attached affidavits would change the result of his case if it were reopened. *Jiang*, 568 F.3d at 1256-57.

Furthermore, when the BIA denied Acosta's motion to reopen, it adopted the reasons from its initial decision affirming the IJ's denial of his asylum application. The IJ had determined that the Honduran government did not turn a blind eye, nor demonstrate an unwillingness to help Acosta, based on the fact that they took the police reports, arrested Sarmiento, and then apparently acquitted him at trial. In affirming the IJ's denial, the BIA concluded that Acosta had failed to show that the Honduran authorities were unable or unwilling to protect his family. Because a failure to show that he sought protection or that the Honduran government was unable or unwilling to help him can defeat an asylum claim, *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007) , this was an independent ground for the denial of his motion. In his petition for review, Acosta fails to challenge the BIA's denial of his motion to reopen on this basis; the issue is therefore abandoned. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Accordingly, his petition for review is denied.

**PETITION DENIED.**

9